Battle, J.
 

 The main question, in this case, is, whether burglary can be committed by breaking into a store-house, in which the owner occasionally slept, when he had a dwelling*
 
 *431
 
 house two hundred yards distant, in which he usually slept with his family. That it may, seems to be fully sustained by the case of
 
 State
 
 v.
 
 Wilson,
 
 1 Hay. Rep. 279, upon which his Honor relied in the Court below. In the report of that case, it is stated that the prisoner was pardoned by the Governor ; but whether the pardon was granted ou account of any doubt about the correctness of the decision, we are not informed. However that may be, the counsel for the present prisoner contends that the decision is not sanctioned by principle, and is opposed by the
 
 authority
 
 of other cases.
 

 In the case of the
 
 State
 
 v. Langford, 1 Dev. Rep. 253, referred to by the prisoner’s counsel, the subject of burglary is so clearly and forcibly explained by IIeNdeesoN, J-., that we must be excused for extracting several sentences from it; “ Burglary is the breaking and entering into the
 
 mansion
 
 house of another, in the night time, with an intent to commit some felony within the same, whether such intent be executed or not. It is almost the only case where crime in the highest degree is not dependent on the consummation of the intent; in almost all other offenses, there is a
 
 loeus penitentice.
 
 But the law throws her mantle around the dwelling of man, because it is the place of his
 
 repose,
 
 and protects, not only the house iii which he sleeps, but also, all the other appurtenances thereto, ■as parcel, or parts thereof, from meditated harm. Thus the kitchen — the laundry — dlie meat, or smoke-house, and the •dairy, are within its protection ; for they are all used as parts of one whole; each contributing, in its way, to the comfort or convenience of the place, as a mansion or dwelling. They are used with that Anew, and that alone, and it may be admitted that all houses, contiguous to the dwelling, are,
 
 prima
 
 yfaeie, of that description. But when it is proved that they are used for other purposes, as for labor, as a workshop, — ‘■for vending goods, as a store-house, this destroys the presumption. It then appears that, they are there for purposes unconnected with the actual dwelling-house, and do not render it more comfortable, or convenient as a dwelling; in short, that they are not parcel or part thereof, but are used for other and dis
 
 *432
 
 tinct purposes. The house, as a dwelling, is equally as comfortable and convenient without, as with, them. Their contiguity to the dwelling may afford convenience, or comfort, to the occupant as a mechanic, or laborer, or shop-keeper, but none to him as a house-keeper.”
 

 The principles of the law of burglary, thus laid down, are not at all controverted by Taylor, C. J., who dissented from the judgment of the Court in that case ; for he bases liis opinion entirely upon the ground, that the store-house, which was broken open, was situated so near to the dwelling-house of the prosecutor, and was so connected with it, as to be within its protection.
 

 The breaking into a store-house then, as such, is not burglary, and cannot become so, unless its situation makes it a part of the dwelling-house, or unless it is otherwise made to assume the character of a dwelling-house. This may be done by being used
 
 habitually, and
 
 usually, by the owner, or his clerk, or servant, as a place for sleeping; but not by being used
 
 occasionally, only,
 
 for such a purpose. In the latter case it is not, and cannot, properly, be called a dwelling-house— the place of a man’s
 
 repose,
 
 which it is necessary for the law to protect from nocturnal invasion, by denouncing the penalty of death against the invader. Thus we find it stated in 1 Hale’s P. C. 557, 558, that if a man hire a shop, in. which he, or his servant, usually, or often, lodge, burglary may be committed therein; but, says Mr. East, in his Pleas of the Crown, vol. 2, page 497, generally speaking, it seems that a mere casual use of a tenement as a lodging, or only upon some particular occasions, will not constitute it a dwelling-house for this purpose. In
 
 Brown's case,
 
 all the Judges agreed that the fact of a servant having slept in a barn, the night it was broken open, and for several nights before, being put there for the purpose of watching against thieves, made no sort of difference in the question, whether burglary, or not; so (it was said in Smith’s case) a porter lying in a ware-house to
 
 watch goods,
 
 which is only for a particular purpose, does not make it a dwelling-house, but if all communication with the dwell-
 
 *433
 
 bouse, of which it is a part, be not excluded, it may still be a part of the house in which burglary may be committed. See 2 East Pl. C. 497, 501; Arch. Crim. Pl. 300, and Roscoe’s Cr. Ev. 351.
 

 Testing the present case by the principles thus established, we shall find that the store-house of the prosecutor was not, at the time when it was entered by the prisoner, one in which burglary could be committed. The prosecutor had a dwelling-house in which he
 
 usually
 
 resided, and slept with his family. The store-house was standing two hundred yards distant from it, on the opposite side of the public road. It had no chimney, and there was neither a bed nor bed-stead in it. The owner slept there sometimes as often as twice a week, and at' other times not once in two weeks. ’When he did sleep there, it was upon a pallet on the counter, the bed-clothing being kept in a box at the store. His sleeping there must, therefore, be regarded as only occasional, and that could not, in any sense, either technical or otherwise, constitute the store his dwelling-house.
 

 The judgment must be reversed, and a
 
 venire ele novo
 
 awarded. This result withdraws from our consideration the other questions made on the trial of the cause.
 

 Per OuRiAM, Judgment reversed.